**No. 21-3762**
**Consolidated with No. 22-3479**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**
_____

**SET SHAHBABIAN, M.D.**

**Plaintiff/Appellant**

**vs.**

**TRIHEALTH, INC.**
**TRIHEALTH G, LLC**
**MAYFIELD CLINIC, INC.**

**Defendants/Appellees**
_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**
**TRIAL COURT NO.  1:18-CV-00790**
_____

**REPLY BRIEF OF APPELLANT SET SHAHBABIAN, M.D.**
_____

**MARK J. BYRNE (0029243)**
**Jacobs, Kleinman, Seibel &**
**McNally, LPA**
**Cincinnati Club Building**
**30 Garfield Place, Suite 905**
**Cincinnati, Ohio  45202**
**Tel: (513) 381-6600**
**Fax:  (513) 381-4150**
**Email:  mbyrne@jksmlaw.com**
_Attorney for Plaintiff/Appellant_

# TABLE OF CONTENTS

TABLE OF CONTENTS...............................................................................i

TABLE OF CASES, STATUTES AND OTHER AUTHORITIES ...................... iii

I.      INTRODUCTION .......................................................................1

II.     COUNTERSTATEMENT OF FACTS...........................................1

A. Issue of material fact exists that TriHealth discriminated against
   Shahbabian because of his age. (Doc. 41, PAGEID ##45-71) ...............6

   1.  Direct evidence of age discrimination exists. (Doc. 41, PAGEID
       ##47-57............................................................................7

   2.  The circumstantial evidence in the record establishes an issue of
       fact exists as to Shahbabian's age discrimination claim (Doc. 41,
       PAGEID ##57-63)..............................................................13

   3.  A material issue of fact exist as to pretext. (Doc. 41, PAGEID
       ##63-72............................................................................17

B. The Court abused its discretion in denying Shahbabian's motion to
   include the Murphy Declaration as part of the record. (Doc. 41,
   PAGEID ##73-75) .................................................................20

C. Shahbabian's state law claims are not barred by O.R.C. §2305.251(A),
   the HCQIA, or his alleged failure to exhaust internal remedies. (Doc. 41,
   PAGEID  ##76-79; Doc. 47, PAGEID ##30-38)....................................24

D. TriHealth is not entitled to recover the gross amount of money paid to
   Shahbabian. (Doc. 41, PAGEID #76-78)................................................25

E. An issue of fact exists that Mayfield aided and abetted the
   discrimination against Shahbabian in violation of Ohio Revised Code
   §4112.02(J) (Doc. 47, PAGEID ##38-41) ...............................................25

III.    CONCLUSION............................................................................26

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................28

CERTIFICATE OF SERVICE ................................................................29

DESIGNATION OF APPENDIX CONTENTS.......................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Bledsoe v. TVA Board of Dir.,* 42 F.4th 568, 581-586 (6th Cir. 2022).....................10

*Brahmbhatt v. General Products Corp.*, No. 1:12-cv-919, 2014
WL2711839 (S.D. Ohio June 16, 2014) ...............................................8

*Braud v. Cuyahoga County Career Ctr.,* No. .1:06 CV 1059, 2007 U.S. Dist.
LEXIS 22526 (N.D. Ohio 2007).............................................25

*Chulsky v. Golden Corral Corp.*, 583 F. Supp. 3d 1059, 1087 (S.D. Ohio 2022) ..26

*Clifford v. Hagerich*, Lorain App. Nos. 3974, 4002, 1986, Ohio App.
LEXIS 9684, 1986 WL13853 at ¶3 (9th App. 1986)...................................7

*Durante v. Ohio Civil Rights Comm'n*, 902 F.2d 1568, 1900 WL 68856
at *3 (6th Cir. 1990) ................................................20

*EID v. Saint Gobain Abrasives Inc.*, 2008 U.S. Dist. LEXIS 122048, 2008
WL2095346 (E.D. Mich. 2008) ...............................................9

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998)............11

*Felder v. Nortel Networks Corp.*, 187 F. App'x 586, 595 (6th Cir. 2006)..............20

*Hale v. ABF Freight Systems, Inc.*, 503 F. App'x 323 (6th Cir. 2012) ...................11

*Leonard v. Twin Towers*, 6 F. App'x 223, 230 (6th Cir. 2001)...............................11

*Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014)....................................21

*Reddy v. JP Morgan Chase Bank, N.A.,* 116 Fair Empl. Prac. Cas. (BNA)
1551 (S.D. Ohio 2012)...............................................25

*Sloat v. Hewlitt Packard Enter. Co.*, 18 F.4th 204 (6th Cir. 2021) ..........................12

*Talwar v. Catholic Healthcare Partners*, 258 F. App'x 800, 806 (6th Cir. 2007)...20

*Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985) ..........................6,7

*Werthmann v. DONet, Inc.,* Montgomery Cty. No. 20814, 2005-Ohio-3185 at ¶88 (2nd App.)..................................................................................................7

*Willard v. Huntington Ford Inc.*, 952 F.3d 765, 813-814 (6th Cor. 2020)...............18

**Authorities:**

42 U.S.C. §11111(a)(1)...........................................................................25

Ohio Revised Code §4112.02(A)............................................................25

Ohio Revised Code §4112.02(J)............................................................25

I.      **INTRODUCTION**

TriHealth and Mayfield together have submitted two briefs containing a total of 29,723 words in explaining why there is no issue of material fact in the case. However, when construing the facts in the light most favorable to Shahbabian, a reasonable jury could conclude liability exists on behalf of both defendants. Shahbabian will address the arguments of both Defendants in this Reply Brief within the 6,500 word limitation contained in the appellate rules.

II.     **COUNTERSTATEMENT OF FACTS**

In TriHealth's and Mayfield's Statement of the Case, they devote 21 and 16 pages respectively in attempting to paint the picture that Shahbabian was a substandard physician and therefore TriHealth had no alternative in May 2017 but to constructively suspend his surgical privileges.  (Doc. 41, PAGEID ##19-41; Doc. 47, PAGEID ##9-25).[1]  The record in this case directly contradicts TriHealth's one-sided version of Shahbabian's medical competency.

TriHealth and Mayfield begin their cherrypicked recitation of Shahbabian's alleged shortcomings beginning with a failure by Shahbabian to complete his medical record documentation in 1988.  (Doc. 41, PAGEID #20)   They follow up their allegations by including complaints regarding Shahbabian that occurred in

---

[1] The reference to Doc. 41 is to the TriHealth Appellate Brief and that reference will remain throughout Shahbabian's Reply Brief.

2003, and an agreement by Shahbabian to attend a stress management program in 2004. (*Id.*)  TriHealth then chronologically describes quality of care issues that it claims occurred in 2009, 2011, 2012, and 2013.  (Doc. 41, PAGEID ##22-24)

Nevertheless, in spite of all these alleged quality issues, TriHealth agreed to a five year employment contract with Shahbabian beginning on May 1, 2014 and ending on April 30, 2019.  According to TriHealth, Shahbabian's medical skills were so deficient such that TriHealth agreed to pay him $968,000 per year for the five year contract.  If Shahbabian was such a liability to Good Samaritan Hospital and its patients, it is incomprehensible that sophisticated high level executives associated with TriHealth would agree to a five year contract exposing their patients to a physician who it now claims was incompetent.  The only logical reason is that Shahbabian's medical skills were consistent with those in the community and as shown herein, he met the standard of care to retain his surgical privileges at the hospital.

The facts in this case show that from 2012 through the end of 2016, Shahbabian was regularly evaluated by the Good Samaritan medical staff to determine whether or not he should be reappointed as a surgeon with full clinical privileges at Good Samaritan. For example, on October 18, 2012, the Good Samaritan Department of Neurosurgery approved Shahbabian's clinical privileges to perform surgery at Good Samaritan.  The medical staff determined that his

performance in the areas of patient care, medical/clinical knowledge, clinical judgment, technical and clinical skills, interpersonal and communication skills, professionalism, practice based learning and improvement, systems based practice, quality assurance report, compliance with the by-laws, rules, regulations and policies along with his physical and medical status was satisfactory. (RE. 154-18, PAGEID #9556). TriHealth was so impressed with Shahbabian's clinical skills that it recommended adding additional privileges for Vertebroplasty in 2013. (RE 154-18, PAGEID #9554) Two years later, on December 17, 2014, Shahbabian's performance and surgical clinical status were evaluated by the Good Samaritan medical staff as satisfactory and he was reappointed with full surgical privileges. (RE 154-18, PAGEID #9553)  The last Staff Reappointment Evaluation prior to the 2017 sham peer review process was conducted by Drs. Ringer and Kerlakian and approved by the Board of Trustees on December 14, 2016.  Similar to 2014, both Kerlakian and Ringer recommended full privileges for Shahbabian noting that his performance in all areas of surgery was satisfactory.  (RE 154-18, PAGEID #9552)  He was granted the full range of surgical privileges for 2017 and 2018. (*Id.*)

Additionally, between 2013 and 2017, numerous individuals associated with TriHealth and Mayfield confirmed Shahbabian's surgical competency.  On January 2, 2014, Kerlakian sent a letter to Shahbabian commenting that a focus review had been performed on his surgical case and the results of his review were impressive.

(Appellant Brief Doc. 36, PAGEID #34)[2] Again, on January 7, 2016, TriHealth
reviewed one hundred of Shahbabian's surgeries from September 1st through the end
of December 2015 and concluded that there were no significant complications. (Doc.
36, PAGEID #34)    On September 13, 2016, Collins, the Good Samaritan Chief
Medical Officer, wrote in an email that there were no quality of care issues
associated with Shahbabian as of that date.  (Doc. 36, PAGEID #38)  Six months
later, in mid-February 2017, Collins confirmed in an email to Cercek that there were
no behavioral or quality of care issues that existed with Shahbabian.  (Doc. 36,
PAGEID #45)

The positive opinions relating to Shahbabian's competency as a surgeon
continued even after TriHealth and Mayfield conspired to take away his privileges
in May of 2017.  In a May 20, 2017 email written by Kerlakian in his role as the
Chairman of the Peer Review Committee, he did not believe that on May 18, 2017,
due process was followed in TriHealth's revocation of Shahbabian's surgical clinical
privileges.  (Doc. 36, PAGEID ##48-49)  In his opinion, Shahbabian's privileges
were revoked in part because Mayfield had a vested interest in seeing Shahbabian
retire in order to capture Shahbabian's business. (Doc. 36, PAGEID #49)  According
to Kerlakian, the decision to seek the revocation of Shahbabian's privileges occurred

---

[2] References to Doc. 36 and a page number are for the purpose of alerting the panel
to the location where a citation in Shahbabian's principal brief has been previously
made.

over a two hour period without full knowledge of the facts and with <u>no clear</u> <u>imminent danger to TriHealth's patients</u>.  (Doc. 36, PAGEID #49)  Even as late as May 25, 2017, McPherson told Cercek that Mayfield trusted Shahbabian's medical judgment and that he would be an excellent surgeon to provide care to Mayfield's post-surgical patients. (Doc. 36, PAGEID ##51-52)

In regard to the three 2015 Peer Review proceedings involving Shahbabian, in two of them Dr. Jon Tew, a noted Cincinnati neurosurgeon, reviewed Shahbabian's performance in those cases and provided an opinion that he was satisfied with the quality of care provided by Shahbabian for those patients. (Doc. 36, PAGEID #31)  Moreover, in each of the 2015 cases, Shahbabian provided a full explanation of his care and in each situation explained why the quality of care provided by him was not below the acceptable standard of care.  (Doc. 36, PAGEID #27, February 19, 2015 case; Doc. 36, PAGEID #28, the second peer review; Doc. 36, PAGEID #32, the third peer review case). However, the Peer Review Committee, at the insistence of the Director of Neurosurgery – Dr. Ringer – assigned negative case weights to Shahbabian's performance on each occasion.

Accordingly, even if the issues relating to Shahbabian's performance cited by TriHealth were true, significant material facts exist which, when construed in the light most favorable to Shahbabian, could lead a reasonable jury to conclude that the constructive revocation of Shahbabian's surgical privileges on May 18, 2017 was

the result of discriminatory animus by several decisionmakers including Donovan, Ringer, and Collins to force Shahbabian's retirement because he was old, and transfer his patient referral base to Mayfield.

**A. <u>Issues of material fact exists that TriHealth discriminated against Shahbabian because of his age. (Doc. 41, PAGEID ##45-71).</u>**

TriHealth argues that Shahbabian testified away his age claim because in his deposition he limited the individuals against whom he believed had discriminated against him.  (Doc. 41, PAGEID #46).  In support of this assertion, TriHealth cites Shahbabian's deposition testimony where its counsel asks Shahbabian to identify the individuals who "discriminated against him because of age." *Id.*  However, within the questions cited by TriHealth in its brief, Shahbabian's counsel objected in the transcript on the basis that its counsel's questions called for a legal conclusion. TriHealth has omitted the objections made by Shahbabian's counsel.  (See RE 181-1, PAGEID # 13490/Lines 14, 20; #13491/Lines 1, 18, 24).  The objections to the questions were lodged because the questions sought testimony from Shahbabian on the ultimate legal issue in the case – discrimination.

Sixth Circuit case law holds that questions posed to a witness asking an opinion on the ultimate legal issue in the case are inadmissible.  Specifically, this Court has held that questions asked of a witness as to whether the witness had been discriminated against calls for an improper legal conclusion and is therefore inadmissible. *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985).  <u>See</u>

also, *Werthmann v. DONet, Inc.*, Montgomery Cty. No. 20814, 2005-Ohio-3185 at ¶88 (2nd App.) (on summary judgment, the issue to be decided by the trial judge is based on facts presented not lay person's opinions on particular legal theories). *Clifford v. Hagerich*, Lorain App. Nos. 3974, 4002, 1986, Ohio App. LEXIS 9684, 1986 WL 13853 at ¶3 (9th App. 1986) (a layman's testimony about a legal conclusion has no probative value).

TriHealth argues that because Shahbabian, in his deposition, could not provide deposition testimony identifying Ringer, Kerlakian, or any member of the QAC or PAC of discrimination, that the Court is unable to look beyond his testimony in determining whether an issue of material fact exists as to the ultimate issue in the case – age discrimination. (Doc. 41, PAGEID #49). *Torres v. County of Oakland, Id.* TriHealth is wrong. Testimony from Shahbabian in response to questions asking him to describe discriminatory conduct, the identification of the alleged discriminators, or any other legal issue is inadmissible and cannot be relied upon as evidence either at the summary judgment stage or at trial.[3]

1. **Direct evidence of age discrimination exists. (Doc. 41, PAGEID ##47-57.**

---

[3] Throughout its Brief, TriHealth relies upon improper questions it asked of Shahbabian where it sought answers on ultimate legal questions. In each of these instances, that testimony should be disregarded. (See Doc. 41, PAGEID ##49, 50, 72-73, FN 11)

TriHealth asserts that the district court did not commit error in disregarding as direct evidence the 23 ageist comments, eight of which were made by Mayfield representatives and 15 by those individuals employed by TriHealth. (Doc. 41, PAGEID #47). Relying upon the case of *Brahmbhatt v. General Products Corp.*, No. 1:12-cv-919, 2014 WL2711839 (S.D. Ohio June 16, 2014), TriHealth states that six of the statements relied upon by Shahbabian in his discrimination claim against TriHealth were nothing more than his own quotes. (*Id.* at PAGEID #48). *Brahmbhatt* is inapplicable as the district court in that case held that plaintiff's self-serving affidavit without corroborating evidence cannot be considered in a summary judgment motion. Moreover, *Brahmbhatt* is inconsistent with the Sixth Circuit law which holds a plaintiff's testimony alone is sufficient to create a jury question in a summary judgment proceeding. (See Doc. 36, PAGEID ##59-60).

In addition, the statements offered by Shahbabian in a journal he kept are statements made by TriHealth management personnel and recorded in his journal at the time they were made. The journal is corroborating evidence and its authenticity is unrebutted. The six statements referenced by TriHealth include:[4]

- Shahbabian Depo. RE 181-3, PAGEID #13794 – March 12, 2015 conversation between Kerlakian and Shahbabian where Kerlakian told Shahbabian he should be examined because he was over 70. Shahbabian is told this request was initiated by Collins.

---

[4] Although TriHealth references six statements, only five separate documents are referenced in its brief.

- Shahbabian Depo. RE 181-3, PAGEID #13796 – April 2, 2015 conversation by Collins where he falsely tells Shahbabian that TriHealth is in the process of requiring mandatory medical evaluations for all medical staff over the age of 65 and especially for those over 70.

- Shahbabian Depo. RE 181-3, PAGEID #13810 – Statements made by Drs. Kerlakian, Saba, Matthew Recht, and Ringer in 2015 in a meeting with Shahbabian that he should retire and gradually transfer care to new people.

- Shahbabian Depo. RE 181-3, PAGEID #13821 – (This document is a June 16 note which does not contain ageist statements and was erroneously identified by TriHealth as a reference Shahbabian relied upon in claiming age discrimination).

- Shahbabian Depo. RE 181-3, PAGEID #13825 – (This document is a November 6, 2015 note which does not contain ageist statements and was erroneously identified by TriHealth as a reference Shahbabian relied upon in claiming age discrimination).

TriHealth also argues the ageist statements made by its agents and Mayfield's employees including Ringer and McPherson did not occur proximate in time to TriHealth's 2017 actions in forcing Shahbabian to relinquish his surgical privileges. (Doc. 41, PAGEID #51)  That is incorrect.  The ageist statements made by TriHealth employees and the Mayfield physicians, while acting in the capacity of Peer Review participants on TriHealth's behalf, occurred uniformly and regularly beginning in 2012 through 2017. (See Doc. 36, PAGEID ##63-65)  They are not isolated comments, and constitute evidence that can be used in the case.  See <u>EID v. Saint Gobain Abrasives, Inc.</u>, 2008 U.S. Dist. LEXIS 122048, 2008 WL2095346 (E.D. Mich. 2008) (evidence of prior acts which occurred prior to the filing of a claim may

constitute relevant background evidence in a proceeding in which the status of a current practice is at issue).

Statements made by Ringer while orchestrating the peer review matter, Collins who sought Shahbabian's retirement, and Donovan, the Executive Vice President at TriHealth, are relevant as they are some of the decisionmakers in this case.[5] Other statements made by Farrington, McPherson, Arand, and Tami during their interactions between themselves and Chartis in looking to replace Shahbabian and forcing his retirement, are all relevant under at cat's paw theory. See *Bledsoe v. TVA Board of Dir.*, 42 F.4th 568, 581-586 (6th Cir. 2022). Consequently, these comments are material to the actions taken by TriHealth on May 18, 2017.

TriHealth also contends that the statements made to Shahbabian or about Shahbabian outside of his presence regarding a forced retirement are not evidence of discrimination. (Doc. 41, PAGEID #51) TriHealth is wrong.[6] It is true that some comments or inquiries about retirement without more, do not establish direct evidence of age related discrimination. Thus, an employer's friendly inquiries about retirement cannot usually support a finding of age discrimination. However, not all inquiries about retirement are friendly, and repeated and unwelcomed inquiries may certainly be relevant to a showing of age discrimination. At some point, however,

---

[5] In fact, during the May 18, 2017 Peer Review hearing, the panel including Ringer believed Shahbabian should retire.

[6] Mayfield makes the same argument. (Doc. 47, PAGEID ##44-46)

statements about retirement go from innocuous to actionable. See, *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998) (a supervisor remarked that "this company is being run by white haired old men waiting to retire, and this has to change," and that he did "not want any employee over 50 years old on his staff"); *Leonard v. Twin Towers*, 6 F. App'x 223, 230 (6th Cir. 2001) (finding that repeated inquiries about whether 68-year-old employee was going to retire could be sufficient to allow a rational jury to find that employer harbored age-related bias against him). Similarly, here there are genuine issues of material fact as to the existence of age discrimination by TriHealth's and Mayfield's forced retirement efforts to survive summary judgment on Shahbabian's ADEA claim.

The Sixth Circuit's opinion in *Hale v. ABF Freight System, Inc.*, 503 F. App'x 323 (6th Cir. 2012) is instructive. In that case, the plaintiff-employee's immediate supervisor was overhead saying "[Plaintiff] is going to leave here when he is 62. I am going to see it. He has been here long enough, and he is going to go on his social security." *Hale,* 503 F. App's at 329. The court noted that while retirement and years of service are not synonymous with age, the supervisor's comment "was based not on an age-correlated factor but on age itself." *Id*. at 332. This Court held that genuine issues of material fact as to age discrimination existed, and therefore reversed the district court's granting of summary judgment to defendant-employer. *Id*. at 335-36. These cases are consistent with the Sixth Circuit's recent holding in

*Sloat v. Hewlitt Packard Enter. Co.*, 18 F.4th 204 (6th Cir. 2021) which determined that retirement is an obvious concept closely associated with being older. *Id.* at p. 211. Consequently, constant badgering of an employee about retirement is evidence of age discrimination. *Id.*

TriHealth's and Mayfield's inquiries regarding Shahbabian's retirement crossed the friendly divide in 2012. Those inquiries included discussions outside of Shahbabian's presence and unsolicited requests by decisionmakers for him to retire:

- Farrington's statement to the Mayfield shareholders including Ringer and McPherson on October 19, 2012 that multiple opportunities existed for Mayfield with Shahbabian's retirement. (Doc. 36, PAGEID #20)

- McPherson's opinion to the Mayfield Board that it should do whatever it could to transition Shahbabian's patients to Mayfield as Shahbabian moved towards retirement. (Doc. 36, PAGEID #20)

- Farrington, McPherson and Ringer's agreement on November 6, 2014 to leverage the lack of physician coverage for Shahbabian's patients at TriHealth while he was unavailable in order to set a timeline for Shahbabian's retirement. (Doc. 36, PAGEID #26)

- Arthur Arand and the Mayfield Board of Directors' plan on November 9, 2014 to eliminate Shahbabian as a competitor by expediting his retirement. (Doc. 36, PAGEID #26)

- Ringer's statement to the Mayfield Executive Committee in late November 2014 that he had talked with TriHealth executives regarding the potential of Dr. Shahbabian slowing down or retiring from practice which did not appear to be an option from Shahbabian. (RE 153-18, PAGEID #9083-9084)

- Kerlakian's and Ringer's suggestion to Shahbabian on April 14, 2015 that he may consider retirement. (Doc. 36, PAGEID #32)

12

- Donovan's unsolicited opinion expressed on April 19, 2016, that she was committed to a plan to replace Shahbabian as soon as possible as he moves towards retirement. (Doc. 36, PAGEID #36)

- Cercek's conversation in October 2016 with Collins and Kerlakian regarding participating in a future conversation with Shahbabian about his retirement. (Doc. 36, PAGEID #41)

- Collins' statement to Shahbabian on October 31, 2016 as to whether he had thought about retirement, "you know we have to start preparing for retirement because we all retire". (DOC. 36, PAGEID #42)

- The May 18, 2017 Peer Review opinion that Shahbabian should entertain retirement. (Doc. 36, PAGEID #48)

These 10 statements were not friendly inquiries as most of these discussions occurred between TriHealth executives who exercised discretion over the assignment of patients. They were also made by peer review decisionmakers employed by Mayfield, including Ringer and McPherson, who had the authority and did exercise their authority to reduce and ultimately eliminate Shahbabian's surgical privileges. These statements are relevant and admissible as to Shahbabian's age discrimination claim.

   2. **The circumstantial evidence in the record also establishes an issue of fact exists as to Shahbabian's age discrimination claim. (Doc. 41, PAGEID ##57-63).**

There are many ways to establish a prima facie case of age discrimination. They include a showing that Shahbabian was replaced by a substantially younger person, similarly situated younger individuals were treated differently, or

13

circumstances exist that support an inference of discrimination. (Doc. 36, PAGEID ##67-68) TriHealth argues that the evidence in the record does not establish that Shahbabian was replaced by Zachary Temple, a substantially younger person. (Doc. 41, PAGEID #58) That is not the case. Significant evidence exists in the record which establishes material issue of fact that Temple was Shahbabian's replacement:

- In an October 19, 2012 email, Farrington wrote to Ringer and McPherson that Mayfield should recruit Dr. John Powell under the stipulation that there be a working arrangement between Good Samaritan, Shahbabian and Mayfield regarding a transition of Shahbabian's practice. (Doc. 36, PAGEID #19)

- On October 31, 2012, McPherson expressed his opinion to the Mayfield Executive Committee that Mayfield should do whatever it could to transition Shahbabian's patients to Mayfield. (Doc. 36, PAGEID #20)

- A January 8, 2014 meeting between Farrington and Oliphant in which Oliphant stated to Farrington that Shahbabian would only be employed by TriHealth for two years and that Oliphant expected Shahbabian's replacement to be ready to go so that a new Mayfield neurosurgeon would assume Shahbabian's referral patients and maintain his surgical case volume. (Doc. 36, PAGEID #24)

- The June 2, 2014 Co-Clinical Management Agreement in which TriHealth agreed that Mayfield would receive all unassigned neurosurgical and cranial patients that arrived at the emergency room. (Doc. 36, PAGEID #24)

- Farrington's November 6, 2014 email to McPherson and Ringer to withhold physician cross-coverage for Shahbabian as leverage for forcing Shahbabian to "give up/reduce/transition his practice to Mayfield. (Doc. 36, PAGEID #26)

- Ringer's June 2015 statement that because the Peer Review Committee at Good Samaritan was reducing Shahbabian's clinical privileges, it would

be a good time for Mayfield to hire a neurosurgeon to pick up Shahbabian's practice.  (Doc. 36, PAGEID #33)

- The inclusion as one of the performance metrics between TriHealth and Mayfield contained in the 2014 Co-Clinical Management Agreement that Mayfield should recruit a neurosurgeon to establish a presence/practice on the west side to begin an orderly transition of Dr. Shahbabian's practice, patients, and referring physician base. (Doc. 36, PAGEID #33)

- Farrington's April 14, 2016 email to Donovan informing her that prior to her assumption of a leadership position in TriHealth, he had been told by TriHealth leadership that if Mayfield were to hire another neurosurgeon for the westside, that they would promote that person as a TriHealth preferred physician and a replacement for Shahbabian. (Doc. 36, PAGEID #35)

- April 19, 2016 email from Donovan to Farrington in which she wrote that she was committed to replace Dr. Shahbabian as soon as possible as he moves towards retirement and in a phone conversation at the same time her statement to Farrington that TriHealth was committed to transitioning Shahbabian's practice to Mayfield.  (Doc. 36, PAGEID #36)

- Farrington's April 26, 2016 report to the Mayfield Executive Committee that Donovan had agreed that TriHealth would actively support and assist in the transition of Dr. Shahbabian's practice to a Mayfield employed neurosurgeon. (Doc. 36, PAGEID #36)

- A May 12, 2016 email from Farrington to Ringer and McPherson informing them that Donovan had agreed to a formal written plan to transition Set's replacement to Mayfield and that TriHealth would promote the Set replacement to his current referral base. (Doc. 36, PAGEID #36)

- A May 13, 2016 statement by Farrington the Mayfield shareholders that a possible candidate for Shahbabian's replacement was Dr. Temple.  (Doc. 36, PAGEID #37)

- A September 1, 2016 Chartis Group NeuroScience Plan for TriHealth to facilitate the transition of Dr. Shahbabian on a more accelerated timeline with a new Mayfield recruit. (Doc. 36, PAGEID #37)

15

- A September 8, 2016 email from Donovan to Farrington identifying the action plan for the neurosurgery department which included facilitating the transition of Dr. Shahbabian on a more accelerated timeline with the new Mayfield recruit to start 7/17. (Doc. 36, PAGEID #38)

- A September 13, 2016 meeting between Collins and Tami in which they voiced their concern on how much TriHealth was willing to spend on a Shahbabian buyout with Ringer/McPherson being committed to see Shahbabian's patients while transitioning them to Dr. Temple. (Doc. 36, PAGEID #39)

- Farrington's testimony in his deposition that it was anticipated that Dr. Temple would be the recipient of the transition of Dr. Shahbabian's surgical practice. (Doc. 36, PAGEID #39)

- A September 28, 2016 Neuroscience Line Implantation Plan in which Temple was identified as the anticipated replacement for Shahbabian who would assume 80-90% of Dr. Shahbabian's fiscal 2012, 2013, and 2014 surgical volume.  (Doc. 36, PAGEID ##39-40)

- A January 6, 2017 memorandum from Kappel to Steve Gracey indicating that Shahbabian's surgery totals were to be assigned by Temple. (Doc. 36, PAGEID #44)

- On March 19, 2017, Clement wrote to the Chartis representative asking him to forward the final plans for the anticipated Neuroservice Line. (RE 157, PAGEID #9858, Lines 12-17; RE 157-17, PAGEID ##10018-10064). In the final document approved by Clement, TriHealth remained committed to Temple joining Mayfield in July 2017 "and to take, assume most of Dr. Shahbabian's current volume". (RE 157-17, PAGEID #10048) The final plan was for "Dr. Temple be the anticipated replacement for Dr. Shahbabian…to assume 70-75% of Dr. Shahbabian's FY15 volume (270-300 total procedures at TriHealth in FY21)."  (RE 157-17, PAGEID #10049)

- May 3, 2017 meeting between Collins and Tami in which Tami told Shahbabian that Mayfield was bringing in a new physician and that Good

16

Samaritan would transfer Shahbabian's patients to the new physician. (Doc. 36, PAGEID #45)

- Kerlakian's email of May 20, 2017 to Tami identifying Mayfield's vested interest on the Peer Review Committee in voting for the revocation of Shahbabian's privileges for the purpose of seeing Shahbabian retire so that they could capture his business.  (Doc. 36, PAGEID #49)

- Zach Temple's starting date of July 17, 2017. (Doc. 36, PAGEID #54)

- Farrington's testimony in his deposition that Temple assumed some of Shahbabian's referral base.  (Doc. 36, PAGEID #54)

- Cercek's August 7, 2017 email to Donovan in which he writes that Temple is trying his best to absorb Dr. Shahbabian's neurosurgery cases.  (Doc. 36, PAGEID #54)

- Donovan's September 15, 2017 email to Cercek that Dr. Temple needed to be ramped up because he should be getting Shahbabian's cases. (Doc. 36, PAGEID ##56-57)

For purposes of summary judgment, the foregoing evidence establishes a prima facie case.

### 3.  <u>A material issue of fact exist as to pretext. (Doc. 41, PAGEID ##63-72).</u>

TriHealth urges this Court to conclude that no evidence of pretext exists in the in this case.[7]  The record shows otherwise.

Initially, Shahbabian incorporates the reasons articulated in his principal brief which identified the evidence in the case creating an issue of material fact for trial on pretext. (Doc. 36, PAGEID ##71-75)    Moreover, even if the Court concludes

---

[7] Mayfield makes the same argument. (Doc. 47, PAGEID ##46-50).

that the 23 ageist statements made by various individuals in the case do not constitute direct evidence of discrimination, those discriminatory comments may be considered as probative evidence at the pretext stage. *Willard v. Huntington Ford Inc.*, 952 F.3d 765, 813-814 (6th Cir. 2020).

TriHealth attempts to persuade this Court that evidence of pretext does not exist through a myriad of alternative explanations for the incriminating evidence. First, it claims that there was no adverse conduct because Shahbabian voluntarily relinquished his privileges. (Doc. 41, PAGEID #64)    But the record shows Shahbabian's actions were not voluntary as his forced resignation was under duress with a threat that if he did not resign, his surgical privileges would be taken from him. (Doc. 36, PAGEID ##49-51)  An alternative offered to an employee to resign or be fired is not a voluntary resignation.

Second, TriHealth claims that Shahbabian did not contest the facts underlying the adverse actions.  (Doc. 41, PAGEID #65)   That is inaccurate as throughout the process, Shahbabian offered explanations for each negative patient outcome.

Third, TriHealth argues that Dr. Tew's opinion that he had no criticisms of Shahbabian's care of the 2015 patients involved in the peer review process, should be disregarded as a co-worker's opinion of Shahbabian's performance.  (Doc. 41, PAGEID #67)  The characterization of Tew's opinion in that manner is untrue.  Tew was asked by the hospital to review Shahbabian's performance.  When Kerlakian

presented it to the Peer review committee, they disregarded the finding as it was inconsistent with the prior ordained result sought by Ringer & McPherson.

Fourth, TriHealth asks this Court to disregard Kerlakian's May 20, 2017 email because it was written after Shahbabian was forced to resign his surgical privileges. TriHealth points to references in the record for purposes of attempting to create an inference that Kerlakian would not have otherwise written that email.  The first reference is Depo. RE 175, PAGEID ##12580-12581 which has nothing to do with the May 20, 2017 email.  It involves a 2015 piece of correspondence.  The second reference, PAGEID ##12602-12610, does not corroborate a conclusion that Kerlakian's May 20, 2017 email is not an expression of his thoughts as the Chairman of the Surgery Department and Good Samaritan.[8]

Finally, TriHealth states that a deviation from due process which arises under the peer review policy that existed at Good Samaritan is not evidence of age discrimination.  (Doc. 41, PAGEID #70)   That statement is inconsistent with Sixth Circuit law.  Previous decisions in this Circuit have held that a reasonable factfinder can conclude that a defendant's failure to abide by the terms of a company policy relating to internal disciplinary procedures may constitute evidence of pretext. *Talwar v. Catholic Healthcare Partners,* 258 F. App'x 800, 806 (6th Cir. 2007)

---

[8] TriHealth refers to some type of nepotism as part of the case.  That has never been an issue.

(citing *Durante v. Ohio Civil Rights Comm'n*, 902 F2d 1568, 1990 WL 68856 at *3 (6th Cir. 1990) ("Evidence of disparate application of disciplinary procedures in the termination decision is merely evidence relevant to the ultimate question of discriminatory discharge."); *Felder v. Nortel Networks Corp.*, 187 F. App'x 586, 595 (6th Cir. 2006) (suggesting that failure to adhere to internal disciplinary procedures may constitute evidence of discrimination).  TriHealth's failure to accord due process to Shahbabian is evidence of pretext of its unlawful discriminatory conduct.

**B.** **The Court abused its discretion in denying Shahbabian's motion to include the Murphy Declaration as part of the record. (Doc. 41, PAGEID ##73-75).**

The trial court's rejection of the inclusion of the Murphy affidavit was an abuse of discretion.

In the Fall of 2020, Shahbabian interviewed Timothy Murphy.  It was determined Mr. Murphy had relevant evidence relating to Shahbabian's discrimination claim.  The issue was brought to the trial court's attention.  The court set a briefing schedule on December 8, 2020.  Although the court had summary judgment filings before it, it had not issued a decision.  In compliance with trial court's schedule, Shahbabian filed a motion to include the Murphy declaration as part of the record. (RE 201)  The court denied the motion on March 24, 2021.  (RE 207)  Shahbabian filed a Motion for Reconsideration on April 17, 2021. (RE 209)

The court denied the motion on July 22, 2021. (RE 212)  The court abused its discretion in not allowing the declaration of Murphy to be part of the trial court record and denying the Motion for Reconsideration.

The Sixth Circuit standard for allowing the filing of Murphy's Declaration falls within the umbrella of a district court's discretion under the Rules of Civil Procedure to manage the discovery process and control their dockets. *Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014) citing to *Fed. R. Civ. P. 16(b)(4)*.  A district court's decision regarding the denial for additional time is reviewed for abuse of discretion. *Id.*  In conducting that review, the Court considers the following facts:

> (1)  when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to…prior discovery requests.

*Id.* (citations omitted)  The overarching inquiry in these overlapping factors is whether the moving party was diligent in pursuing discovery. (*Id.*)

First, the trial court rejected Murphy's declaration because it did not appear to be probative for which it would be used.  (RE 207, PAGEID #16306)  Murphy's testimony in his declaration is probative in regard to the issues in the case. Shahbabian brought claims for age discrimination in violation of Ohio and federal law.  In his First Amended Complaint at paragraphs 55, 56, 81 and 82, Shahbabian alleges that TriHealth unlawfully attempted to clawback his prior compensation

21

because of his age. (RE 21, PAGEID #11) Shahbabian alleged in paragraphs 81(E) and 82 that the clawback violated the ADEA and the Ohio Fair Employment Practice Act. (RE 21, PAGEID ##121-122) Murphy's Declaration is probative and material to Shahbabian's age claims because Murphy's testimony confirms that Cercek directed him to initiate the clawback process in 2018 because Shahbabian was old. (RE 201-1, PAGEID #15682, ¶11) This constitutes direct evidence of discrimination which would allow a jury to decide whether the clawback provision in Shahbabian's contract was discriminatorily applied and whether it should be enforced against him.

The decision to seek a clawback of the alleged overcompensation paid to Shahbabian was made by Robert Cercek ("Cercek"). He was first employed with TriHealth on August 22, 2016. (RE 159, PAGEID #10120/Lines 10-11)  Murphy became associated with TriHealth in May of 2017. (RE 201-1, PAGEID #15681, ¶2)

In 2017, Cercek instructed Murphy not to enforce contractual clawback provisions when performing compensation statement reconciliations for TriHealth physicians who were on a draw system. (RE 201-1, PAGEID #15682, ¶9)  In his Declaration, Murphy states, "[o]ne exception to Mr. Cercek's directive to forgive overpayment was Dr. Set Shahbabian." (RE 201-1, PAGEID #15682, ¶10)

In 2018, Cercek directed Murphy to clawback compensation from Dr. Shahbabian. (RE 201-1, PAGEID #15682)  Cercek told Murphy that he did not believe Dr. Shahbabian would challenge the clawback decision because he was old.

(RE 201-1, PAGEID #15682)   Cercek reasoned that if Shahbabian ever opposed the clawback process in front of a jury, a jury would not believe that Shahbabian could have performed the surgeries to reach his production criteria under his contract. (RE 201-1, PAGEID #15682)   Murphy testified that he did not recall, "any other physician at TPP who was required to pay back compensation under the clawback provision of an employment contract." (*Id.*)

This Court concluded that Murphy's testimony was not probative of disparate treatment towards Shahbabian because other evidence exists in the current record which the Court weighed against Shahbabian in rejecting Murphy's "one exception" testimony.

In discounting the probative nature of Murphy's Declaration, the Court referred the parties to the deposition of Brad Hall. (RE 202, PAGEID #15746). During the February 27, 2020 deposition of Brad Hall as TriHealth's Rule 30(b)(6) representative, he was asked to identify individuals who were overpaid for which a clawback was requested. (RE 202, PAGEID #15746/Lines 12-15)   Hall identified a series of documents he believed demonstrated TriHealth's previous efforts to recover excess payments from physicians on a draw.  Those documents were marked as TriHealth Bates Stamp 7462 through 7674 and as Exhibit 18 to Hall's deposition. (RE 202, PAGEID #15747/Lines 12-19)   The example that the court relied upon contained in the Hall deposition related to an overpayment of $1,183.16 which was

returned from an unnamed physician on March 24, 2016. (RE 202, PAGEID #15748/Lines 21-22; RE 202-5, PAGEID #16024) The clawback period occurred prior to either Cercek or Murphy being employed by TriHealth which is therefore immaterial to Cercek's animus in demanding a clawback by Shahbabian because he was old.

In addition, Shahbabian was not dilatory in seeking discovery from TriHealth. The description of the attempts made by Shahbabian to obtain discovery from TriHealth from the date of the filing of the original complaint on November 18, 2018 through February 27, 2020 is fully set forth in his Motion for Reconsideration and is incorporated herein. (RE 209, PAGEID ##16493-16498)

Finally, as explained in the Motion for Reconsideration, the filing of Murphy's declaration in December of 2020 did not unduly prejudice the Defendants. The reasoning supporting this conclusion is again set forth in Shahbabian's Motion for Reconsideration and is incorporated herein. (RE 209, PAGEID ##16498-16499) But in essence the trial court had not ruled on the motion and did not do so for seven months after the declaration was presented to the Court.

Based on all of the foregoing, the trial court's denial of allowing the filing of Murphy's declaration was an abuse of discretion.

**C. Shahbabian's state law claims are not barred by O.R.C. §2305.251(A), the HCQIA, or his alleged failure to exhaust internal remedies. (Doc. 41, PAGEID ##76-79; Doc. 47, PAGEID ##30-38).**

Shahbabian was not required to internally exhaust hospital administrative requirements before bringing claims of discrimination.  See *Reddy v. JP Morgan Chase Bank, N.A.*, 116 Fair Empl. Prac. Cas. (BNA) 1551 (S.D. Ohio 2012); *Braud v. Cuyahoga County Career Ctr.,* No. 1:06 CV 1059, 2007 U.S. Dist. LEXIS 22526 (N.D. Ohio 2007)  Further, the HCQIA does not apply to claims of discrimination under state and federal laws.  See 42 U.S.C. §11111(a)(1).

### D. <u>TriHealth is not entitled to recover the gross amount of money paid to Shahbabian. (Doc. 41, PAGEID ##76-78).</u>

TriHealth's Rule 30(b)(6) representative testified that TriHealth does not recoup the gross amount of pay on a clawback.  (RE 211, PAGEID #16752-16753)  But instead it is the net payment after taxes which is the amount it regularly seeks to obtain.  The amount sought from Shahbabian of $676,711.61 is a gross amount and not net.  Shahbabian brought this to the attention of the Court before it issued its summary judgment ruling, but was ignored. (*Id.*)  The Court should reverse this judgment and direct the district court to calculate the net amount for a clawback.

### E. <u>An issue of fact exists that Mayfield aided and abetted the discrimination against Shahbabian in violation of Ohio Revised Code §4112.02(J) (Doc. 47, PAGEID ##38-41)</u>.

Mayfield argues that it did not aid, abet, incite, compel, or coerce a violation of Ohio Chapter 4112. Mayfield is wrong. Claims alleging employment discrimination arise under Ohio Revised Code §4112.02 and in this case invoke two distinct subsections:  §§4112.02(A) and (J).  Subsection (J) makes it unlawful for a

"person to aid, abet, incite, compel, or coerce the doing of any act" prohibited by §4112.02, and also prohibits any person from attempting, directly or indirectly, to commit any act prohibited by §4112.02. The language of Subsection (J) basis a person's liability and actually facilitating another's act of violation of Ohio Revised Code §4112.02. *See, Chulsky v. Golden Corral Corp.,* 583 F. Supp. 3d 1059, 1087 (S.D. Ohio 2022). Thus, to determine one's derivative liability under §4112.02(J), one must consider the nature of a primary violation from which liability allegedly derives. Shahbabian has demonstrated the underlying violation of his employment rights and the aid supplied by Mayfield. Accordingly, Shahbabian must demonstrate that an issue of fact existed regarding TriHealth's active violation of Chapter 4112. (*Id.*)

## III.    **CONCLUSION**

For all of the foregoing reasons, Shahbabian requests the judgment of the district court be reversed and the case remanded for trial on Shahbabian's affirmative claims and on TriHealth G's counterclaims.

RESPECTFULLY SUBMITTED,

_/s/  Mark J. Byrne_
**MARK J. BYRNE (0029243)**
JACOBS, KLEINMAN, SEIBEL &
MCNALLY, LPA
Cincinnati Club Building
30 Garfield Place, Suite 905
Cincinnati, OH  45202
Tele:    (513) 381-6600
Fax:      (513) 381-4150
E-Mail:  mbyrne@jksmlaw.com
_Attorney for Plaintiff/Appellant_
_Set Shahbabian, M.D._

27

## <u>CERTIFICATE OF COMPLIANCE</u>

1.   This reply brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    (a)   this reply brief contains 6,334 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(A)(7)(B)(iii), and

    (b)   this brief uses a monospaced typeface and contains 631 lines of text, excluding the parts of the brief exempted by Fed. R. App. P.

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    (a)   This brief has been prepared in a monospaced typeface using Times New Roman at 14 point.


*/s/  Mark J. Byrne*
**MARK J. BYRNE (0029243)**
*Attorney for Plaintiff/Appellant*


Dated:  January 6, 2023

28

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF participants and counsel of record as follows:

Deborah S. Adams, Esquire
Brice C. Smallwood, Esquire
Frost Brown Todd LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
dadams@fbtlaw.com
bsmallwood@fbtlaw.com
*Attorneys for TriHealth, Inc. and
TriHealth G, LLC*

Fred G. Pressley, Jr., Esquire
Zachary A. El-Sawaf, Esquire
Porter Wright Morris & Arthur LLP
41 South High Street, Suite 2800
Columbus, Ohio  43215
fpressley@porterwright.com
zelsawaf@porterwright.com
*Attorneys for Mayfield Clinic, Inc*

/s/ Mark J. Byrne
**MARK J. BYRNE (0029243)**
*Attorney for Plaintiff/Appellant*

**No. 21-3762**
**Consolidated with No. 22-3479**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

_____

**SET SHAHBABIAN, M.D.**

**Plaintiff/Appellant**

**vs.**

**TRIHEALTH, INC.**
**TRIHEALTH G, LLC**
**MAYFIELD CLINIC, INC.**

**Defendants/Appellees**

---

**PLAINTIFF/APPELLANT'S DESIGNATION OF**
**APPENDIX CONTENTS**

---

Plaintiff/Appellant, pursuant to Sixth Circuit Rule 30(b), hereby designates the following filings in the district court's record as items to be included in the Appendix:

| DESCRIPTION OF ENTRY | Record Entry # | Transcript Page/Line/ Exhibit or Para./Page | PAGEID# |
|---|---|---|---|
| First Amended Complaint | 21 | | 11<br>121-122 |
| Deposition of Thomas Tami | 154 | 18 | 9552<br>9553<br>9554<br>9556 |

| DESCRIPTION OF ENTRY | Record Entry # | Transcript Page/Line/ Exhibit or Para./Page | PAGEID# |
|---|---|---|---|
| Deposition of Set Shahbabian | 181 | 1 | 13490-13491 |
| | 181 | 3 | 13794 13796 13810 13821 13825 |
| Deposition of Mark Clement | 157 | | 9858 |
| | 157 | 17 | 10018-10064 10048 10049 |
| Deposition of Robert Cercek | 159 | | 10120 |
| Deposition of George Kerlakian | 175 | | 12580-12581 12602-12610 |
| Motion to Include Murphy Declaration as Part of the Record | 201 | | 15675-15682 |
| | 201 | 1 | 15681 15682 |
| Deposition of Brad Hall | 202 | | 15746 15747 15748 |
| | 202 | 5 | 16024 |
| Order Denying Plaintiff's Motion for Leave to File Declaration | 207 | | 16303-16306 |
| Motion for Reconsideration | 209 | | 16485-16742 |
| Reply in Support of Motion for Reconsideration | 211 | | 16752-16753 |

RESPECTFULLY SUBMITTED,

*/S/  Mark J. Byrne*
**MARK J. BYRNE (0029243)**
JACOBS, KLEINMAN, SEIBEL &
MCNALLY, LPA
Cincinnati Club Building

31

30 Garfield Place, Suite 905
Cincinnati, OH  45202
Tele:    (513) 381-6600
Fax:     (513) 381-4150
E-Mail:  mbyrne@jksmlaw.com
*Attorney for Plaintiff/Appellant*
*Set Shahbabian, M.D.*